Good morning, Your Honor. May it please the Court, I'm Brian Questenberry here for the Defendant Jerry Goodwin. And I also have counsel for the other Defendant, Dee Van Tassell. And we've decided we're going to split this up since we have combined, I understand, 15 minutes. So, how are you going to split it up? Good question, Your Honor. I'm going to address the issue of unclean hands and the other key issue of waiver, modification, statute of fraud. Just tell me how much time you want. So, 7 1⁄2 minutes for me and then 7 1⁄3 for you. All right. That doesn't leave you any rebuttal. Well, all right. So, then let's save a minute on top of that for rebuttal, if I need it. All right. Well, then you need to each go... 6 1⁄2 minutes. Each go... All right. So, you'll go 6 1⁄2, you'll go 6 1⁄2, and then leave for rebuttal. All right. I'm going to tell you when you get to that. And basically, the reason being, he's in a position where he has to look polite to the Court and can't really pull you down off the... And sometimes... So, that being said, I'm going to let him have his time. Okay. He's from Idaho. I'm from Utah. So, I wouldn't want him to pull me down. Yeah. Well, that's between the two of you. That one I can't. That one I can't. I don't work out marital disputes there. So, if you... Unless you want to give me 15 and him 15, but counsel probably won't... Right. Well, if you each take 6, that leaves you 3 minutes for rebuttal. I'll try to make this as complicated as possible for you this morning. All right. Okay. Away we go. I'm going to address, again, the unclean hands issue. And I think the best way to frame this is by the judge's order. Page 27 of her order... Or, excuse me, his order, where he concludes on this unjust... Or, excuse me, the unclean hands. Here's what he says. Again, this is page 27. Both defendants, so that would be mine, were familiar with the market practice of legitimate cattle feed, and both knew Calabrics was an exporter. So that's number one. Both were willing participants in the enterprise. And then both defendants went into the purchase agreement fully informed, and thus the equities do not warrant application of unclean hands. The Court concludes, the Court's conclusion is that because all parties to the purchase agreement were aware of what was taking place, Calabrics' conduct was not inequitable with respect to defendants. And thus... All right. But so where does that happen, though? Where does what? Where does the Court... When in context did the Court say that? Toward the end of the order, after the Court had analyzed... But where was that relative to? Because the argument made against you is that the Court took the unclean hands under submission, that you didn't demand an order, and when the jury instructions were proffered, that there was no objection made at that time. And so the jury... You didn't demand the Court to rule before jury instructions. No instruction was included in the packet. There was no objection, and so the other side is claiming waiver on that. Okay. And so you're getting to the procedural issue relative to... Well, waiver is a huge issue. Obviously, it's different in civil cases than in criminal cases because the law is what goes to the jury, and you have a duty to object, and you have a duty to make sure that you protect that. And when you don't, then the law is whatever the jury gets. So how did... How didn't you waive this? Okay. Now, there's two different waivers maybe that we're talking about. There's a substantive waiver relative to the purchase agreement, and I think you're talking about waiver, the procedural waiver of failure to procedurally raise the issue. Well, the jury wasn't instructed on unclean hands. Correct. The judge... And you're claiming that to be error. Correct. And if the Court was wrong on that, that would be a substantial error. But you have to preserve the error, and what I'm seeing from the instructions is the Court took it under submission, you never forced the Court to rule, and then you didn't object to the what the Court was giving, and there was no unclean hands in there. Sure. So why do we have to review that now? Okay. So you're getting to the procedural part, not the substance of the unclean hands, but the procedural claim that it was not properly preserved. And I think the argument that we've submitted in the brief is that we'd have already addressed it, and then there was some evidence that was heard that day. There was a motion that trial counsel had submitted that morning. So then there's evidence. And the next morning, counsel or, excuse me, the judge had passed out the set of jury instructions, and at that point counsel, for a good one, didn't object. I think that's where you're getting to. And the argument is because it would be an empty gesture. The judge had earlier, the day before, indicated, and I quoted that in the briefing, that when they'd argued it, he'd indicate, okay, the next day I'm going to issue my ruling, my order. And so counsel, trial counsel, felt that it would be an empty gesture. And I think that's what the case law refers to is if it's going to be a futile argument to make, then you don't need to restate something. But you didn't even know what the Court's ruling was. So why would that be futile? Well, apparently he assumed that because that jury instruction was not issued, that he'd lost that issue on the motion for judgment as a matter of law. That's not why you make a record at that time. When you settle jury instructions, if there's any issue that you have with what the judge is going to present, it is incumbent upon the parties or the party to make certain that it is preserved for appeal so that it gets to this point. It is here present before the Court. Sure. And it would have been helpful for him to reiterate the position. Again, I think the argument that they made to Judge Conte was it was futile. We'd already stated it on the record, and thus he didn't need it. So would it have been helpful, would it have been smart to reiterate? Sure. But according to the case law, if it's futile, if it's an empty gesture, then it's not necessary. Okay. So apart from the procedural issue, let me hear your view on why unclean hands would apply in a contract breach case like this one. If your clients took $1.5 million from the plaintiff and then did not deliver product, even if they have some evidence that the plaintiff was going to use the product improperly, why would unclean hands be a defense on that contract claim? Your Honor, because the unclean hands — It didn't sound to me like a traditional use of the unclean hands doctrine. Sure. The unclean hands here applies and is a defense on behalf of Goodwin and Van Tassel to the contract claim based on the inequitable conduct of Calagrex relative to the transaction. But his claim for breach of contract, trying to get back his $1.5 million, for example, that's not coming to the court and asking for an equitable remedy. That's a claim traditionally at law. And I don't really understand how unclean hands would relate to that. And according to — Let's say Al Capone makes a contract with someone, and he's a big gangster, and he takes $1.5 million from the person who is another gangster. Now, he doesn't do what he said he would do, and he gets sued for breach of contract. You know, can he say, well, that guy who I took the money from is a gangster, so it's unclean hands, you can't enforce the contract? The case law allows the equitable defense of unclean hands to apply to a legal issue of breach of contract. It goes both to equity and also to the legal issue. So we're allowed to do that, number one. But number two, because we argue our position is it relates to the transaction, and the law allows it thus to apply to the transaction. So regardless of whether it's criminal or not criminal, I don't think that that's the issue, at least according to the case law. And so there's the issue of relation to the transaction. But one of the two points here that I wanted to leave with the Court here with the limited time is, there's basically there's three bases that the trial judge granted the motion for judgment as a matter of law and thereby threw out the unclean hands defense on the substance. One was that my clients were fully informed. That's the phrase that's used in the word, fully informed of. Let me just one second before, because you are going into your co-counsel's time, but I want to make sure that my colleagues, do you have any of you have any additional questions of, it would be your, Mr. Creasonberry? Yes, that's me. Do either of you have additional questions? Well, I'll just ask this, because I think it's in your briefing, but I might have missed it. What's the single best case that you have that would say that if we can assess unclean hands, despite the jury instruction issue, that it would apply to someone who's tendered funds that aren't returned on a breach of contract case? And my response is because my clients were not fully informed. They did not know. No, he asked what's your single best case. He's asking for a case site. Oh, okay. You're not talking about my argument case. You're talking a law. So you want to know the single best case law out there in support of? Right, that's what I'm asking, because maybe the law's changed since I last looked at it, but I'm still skeptical that this is a proper use of the unclean hands defense, even if the issue was preserved. And I'd have to defer to the case law that's in the briefing, Your Honor, as far as that allows it to apply. All right. Okay. With that in mind, all right, I'm going to have counsel get up. And if you put the clock back at 9, and I'll give you six minutes, and that will leave you three minutes for rebuttal. Thank you. You're giving me how much? You get six minutes. Six minutes. Honorable Justices, I appreciate the opportunity to be here. I'm from Weezer, Idaho. That's a little town of 5,000. This is kind of an unusual circumstance for me, so. Well, welcome. Huh? Welcome. A couple of the issues that I felt needed to be addressed, even in addition to what we had in our briefs, was the issue of waiver and modification, and consequently the issue of statute of frauds. The waiver issue is confused both to the judge and the jury by the fact that in the plaintiff's own case, Mr. Van Tassel clearly pointed out that we're not dealing here with just one contract. At the time they entered into the contract in December of 2004, that was for what's called denatured. That means denatured, dry, nonfat, dried powdered milk. The briefs don't distinguish the difference. The denatured was the 2004 product. The nondenatured was the 2003 product. And so when they entered into the contract and then they found there was a delay, which they used to say that was a waiver through the conduct, that was not the case. What happened here is when they found there was a delay on the 2004 product, the plaintiffs immediately shifted to purchasing in various contracts, both independently from Van Tassel and from the other party. Now, I'm not going to go into the details of that. I'm just going to point out that this was before the jury. This was before the jury. Well, let me ask you this. This was before the jury, right? This was before the jury. Okay. And the jury obviously didn't accept that. So what's the legal error that you're asking us to review on that? The legal error ---- Because factual arguments that you make where a jury finds against you, you know, are problematic on appeal. In this case, there is no evidence of a waiver. They were dealing with other contracts. They were buying and selling at a different price, a different nature of product. Both of them were dry milk from the government program. But the 04 had more restrictions, and so they jumped from there to the 03 product, which the jury and the judge in his comments said the jury could find a waiver from that conduct. That was a intentional conduct by the party dealing with other contracts, not a waiver of the obligation under the 2004 contract. Now, okay, when you're saying the jury ---- when you're saying the judge and the jury, are you saying that the jury was instructed on waiver? The judge instructed on waiver. Did you object to that instruction? No. There just simply isn't evidence to support that instruction. Okay. So the instruction can't be claimed to be error. You're saying that there's ---- it's a sufficiency of the evidence argument? That's correct. In other words, the waiver ---- the mere fact they were dealing with other contracts with a similar product is not ---- there's no evidence, evidence the waiver was not discussed by any of the witnesses that I found in the record. It was simply dealing with other contracts. And to infer, because the judge said to you, and he made that comment on a ruling in the case, that you could infer from that by conduct. The conduct here was an intentional dealing with different contracts with the parties. It had nothing to do with performance of this ---- of the December 2004 contract. And that's the only ---- But, counsel, the 2004 contract made a very specific demand that payment in the amount of $2 million be made by a date certain. That's correct. $1.5 million is paid, and the remaining portion is not paid for a substantial period of time. During that time period, the parties were interacting with other contracts, doing other things. There was some testimony that was made at the time of the trial by the President ---- I can't think of his name at this moment. Gallegos. Gallegos, that there was discussions back and forth, and you won't have to pay this if we do this, so that there were some ---- there may not be explicit modifications to that agreement, but the fact that it was supposed to be paid in full by December 2004, and it went all the way into, I believe, mid-2006, would tend to show, at least that would be reasonable, wouldn't it, that there had been some type of modification to what that original contract was. Okay. On the instruction for the waiver, the defendants had to prove by clear and convincing evidence that there was a waiver. And I'm saying the mere conduct of other contracts doesn't constitute a waiver when you've got a contract that has specific language. Okay. I'm going to put you back to the gentleman that we had previously, that I kept saying, you're making a jury argument. At the time when we review facts here and you say that it was sufficiency of the evidence, we're not free to reweigh the evidence and say we would come to a different result. If there was evidence that supports the verdict, then you lost at the jury. You seem to be re-arguing the case in the way that you argued it in front of the jury, and the jury simply didn't buy it. What I'm saying to you is that there is no evidence to support a clear and convincing evidence that there was a waiver. There was simply dealing with other contracts because they couldn't get, number one, the 2004 product for a short period of time, but they continued, it was more restrictive, more difficult to sell, and the plaintiffs in this case couldn't sell it and didn't sell it, the 2004 product. What they did sell was the 2003 that was less restrictive. Now, as to that issue and the issue of modification. You have like a half a minute left. Okay. As to modification, it says the jury instruction was simply written contract for the 2004 contract period. In this case, there was no performance on the 2004 contract period. Neither party performed. And so the jury could not use that as a basis. And, therefore, the only basis would be the waiver. And I understand there is some testimony, if you argue, that the jury could not use   the distinction without the distinction of these products. The Court did not present an instruction. I couldn't find anything on that. The parties have simply confused two contract dealings and said because you deal with separate contracts, which Mr. Van Tassel clearly testified, there is ample evidence that there was two products here. I'm using up my time. You're using up rebuttal, yes. Thank you. Good morning. Good morning. May it please the Court. I'm Dan Sharp. Kroll and Mooring for Appellee Cal Agrix. Maybe I can ask you, just since we, you know, we've spent some time already to focus on, but I'm understanding that last argument. We had two waiver discussions. All right. There's the one, I guess, there's, you know, I was talking about was the unclean hands, was there a waiver of that by not objecting to the absence of the instruction? But then in the second argument, I think I narrowed it to there wasn't any objection to the instructions on waiver being given when he says that there was, there's insufficient evidence to support the verdict. Do you want to respond to that to say was there conflicting evidence? Is there evidence that supports what the jury found? Absolutely. The simplest and clearest evidence from which a jury could find waiver is that we paid $1.5 million in deposit on the contract, and they kept the money. They didn't say you haven't paid the full 2 million by December 24th, 2004, the contract's over, here's your deposit back. They kept the money. They kept the contract in force. As Judge Englund pointed out, there was substantial evidence in the record that the 2006 about this very issue. Under the contract, the appellants were supposed to deliver 3,000 metric tons of milk powder in January 2006. They didn't. They couldn't get it. And they were telling my clients, we're having problems getting the shipments. You can, you don't have to pay the full deposit now. You can start paying when you start receiving the milk powder. And that was the evidence in front of the jury. The fact that they kept the deposit and didn't return it is ample evidence of waiver. And in addition, the appellants themselves, Mr. Goodwin and Ms. Van Tassel, testified that they considered the contract to be in force and not canceled through 2006. There is ample evidence in the record on the issue of waiver, and this is entirely an appeal from a judgment on a jury verdict and a decision by the district judge on the issue of unclean hands. There is no claim of legal error. There is no claim of exclusion of evidence or erroneous admission of evidence. The decision, the appeal is entirely on the facts. Do you want to address, I think Judge Gould asked certain questions about the unclean hands issue, but I'm not sure if you want to address that area. Yes, I do. The district court decided the issue of unclean hands itself because it's an equitable defense, and under Federal law, equitable defenses can be decided by the district court without submitting it to the jury. And the district court was very clear. I decided this issue. I'm rejecting unclean hands for multiple reasons. Unclean hands requires proof of some immoral, illegal, bad conduct in connection with the very transaction that is the subject of the contract. The claim here was that Calagrex removed labels that said for animal feed only, not for human consumption, and sold the product, intended to sell the product overseas in Asia where it would be used for human consumption. Well, let me ask you sort of a logistical question, because I had that question myself, like, coming into here. My understanding, a lot of times, that a court can sit where you as the bench officer hear the equitable issues, but you have a jury deciding other issues at the same time. So is it your position that that was what was going on, on the unclean hands? The judge was hearing that equitable issue. What if the judge had found that unclean hands was present? How would that have had a different result here? What would have happened then? Well, if the judge had found unclean hands, the judge would have then exercised his equitable discretion to decide the impact of the unclean hands on the contract remedy. But it's page 17 of the trial court's order. It's volume 1 of the record, page 158. The trial court very clearly says the court was entitled to rule on the equitable issue without submitting it to the jury. The court ruled on unclean hands at trial when, after taking Cal Agrax's motion for judgment as a matter of law under submission, it refused to issue the requested instructions. So the district court very clearly said, I'm deciding this. You've put on all your evidence at the trial. There's been a motion for judgment made. I'm granting that motion. I'm refusing your instruction. There's no unclean hands here. And for multiple reasons. First of all, there was no milk product shipped to Cal Agrax that it could mislabel, even if it intended to. So there was no bad conduct in connection with this transaction. But even more fundamentally, there's no evidence in this record that this labeling issue was wrongful, immoral, that there was anything that it would even meet the definition of unclean hands. And there's a lot of – there's an assumption in the briefing, I think. I came to this case after the trial and on appeal. There's an assumption that this mislabeling was somehow involved product that would not be fit for human consumption. And there is no, absolutely no evidence in the record of that. In fact, the evidence is to the contrary. In the text of the case. Kagan. Well, from an appellate perspective, how should we review it?  On one hand, should we rule – should we review the judge's ruling on unclean hands and decide whether the judge was right or wrong? Or there's also the issue of their claiming that they didn't get an instruction and you review an instruction, you know, for abuse of discretion as far – but there's no objection to the instructions that are given. So how does this issue, from your perspective, present it for our – present for our review? Yes. The appeal was on the failure to give the jury instruction. And the Court has correctly pointed out that that error was not preserved and was waived in the district court. So that's one basis on which the Court could decide that issue. A second and independent basis is that even if it were preserved, the appellants were not entitled to have the jury instructed on an equitable defense because the district court had the power to decide that issue itself and did so. So there was no error in refusing to instruct the jury. And you can get past that because the district court did, in fact, rule on the equitable defense. And if you chose to review the merits of that ruling, it's a factual question of what were the facts in the record support the district court's decision that there was no unclean hands here. And I would submit that that was the case for multiple reasons. So almost like a bench trial. Exactly. It was a bench trial. So I've got a question for you, if I can interject, just for perspective. I should know this from the record, but I'll let you save me a little time if you can. How much of the verdict, or the damages awarded, are related to giving back the $1.5 million deposit? And how much are related to other things like remedies for contract breach apart from the deposit? There was $900,000 of deposit that had not been returned at the time of the verdict. And the jury awarded that amount and made certain deductions based on evidence at the trial of other transactions between the parties that was testified to separately and independently. So the answer, how much of the deposit was reflected in the verdict is $900,000. Did the jury also award damages like lost profits on product not delivered? The jury did not award lost profits. What they awarded was cover damages. The reason that the appellants did not deliver the milk powder under this contract was because the price was going up, and they preferred to sell the product that they had under other contracts at higher prices. My client had to go out into the market and cover the 10,000 metric tons, and they had to pay more than the contract price. The jury awarded the difference in the cover price as an element of damages, which is standard under UCC cases like this. Okay. And what's the order of magnitude of the cover damages as contrasted with the return of refund damages? The total damages were $2.894 million. Of that, $900,000 was for the deposit. So the difference of roughly $2 million was a difference in the cover price. Okay. Thanks. I just want to address this issue on the unclean hands of the implication. You can move a little bit that way, or your microphone, because you kind of come in and out when you're looking back and forth. So that's good. Thanks. Sure. There was the implication that the milk product that was the subject of the contract was somehow not fit for human consumption, and that's not the case. This was milk product that was the same. It's exactly the same milk powder, whether it's labeled for human consumption or for animal feed, and you find that at page 245, 246 of Volume 1 of the record. This was product that was sold by the U.S. Department of Agriculture, and it's not in the record. They didn't argue it. But as we all know, the U.S. Department of Agriculture is involved in price supports, and when the department resells milk powder, they don't want it to go back into the market and compete with fresh milk powder being sold in normal channels, and they require it to be labeled when they sell it as not for as for. That's not in the record? It is in the record, Your Honor, at page 245, 246, Volume 1. Okay. So the implication that there was something, you know, malum in se about selling, relabeling this product is simply not supported, and it would be a pity if that made its way into an opinion that this Court were to write. And the additional basis on which the district court rejected unclean hands, as noted by appellants, was there was evidence that the sellers knew exactly what was going on. Animal feed sells for about $200 a ton. This contract was at about $1,000 a ton. They knew what was going on here. They met the Asian purchasers. There was no deception. There was no violation of any statute, ordinance, regulation. And since there was no milk product delivered at all, there was no unclean hands in the transaction. Unless there are further questions, I will submit. There do not appear to be any additional questions from the panel. Thank you for your argument. All right. You collectively have 2 minutes and 20 seconds for rebuttal. And Mr. Quisenberry indicated he took more of his time than I'll cover. The issue in this case was the contract is clear. The defendants were not obligated to perform under the 2004 contract until $2 million were paid. There was only $1.5 million paid. The testimony is clear. They had milk product produced under the 2004 contract if they paid the other $500,000. And the reason for the difference, in other words, counsel argues that the this product sold for more, the 2003 product that was dealt with separately under these separate contracts sold for more because it did not have the denature. It did not have the limitation that the 2004 contract milk did. And that's why my clients didn't intend to keep the $1.5 million. They, in fact, voluntarily paid back $600,000. They didn't pay the rest back until the issue of the uncleaned hands or the issue of 38 loads that were talked about, and the loads were worked out between the parties. And that wasn't worked out until the trial. And so the price difference came because the 2003 was dried milk. It was a standard product. It had less restrictions. The 2004 product that they had difficulty selling had denatured for animal use only. That was on the product at the time it was sold. It's in the contract. That contract was clear. We didn't refute that contract. They never performed, so we never had to perform. On the other that they're now using to say there was a waiver is the product that was 2003 that was less restrictive. It was a higher price because it was less restrictive. It was a better quality product. And that's the issue that came here. There is no evidence on the 2004 contract that there was any waiver, that there was any modification. In fact, Mr. Gallegos's letter of December 17, 2005, a year later, acknowledged that Mr. Van Tassel never backed off the fact that he needed to pay the $2 million before we had to perform. And that's why it wasn't paid. It was never an intent to keep that. It was an intent to deal with the different products. And it's been a mix-up even in the argument by counsel today and in their brief, that we were dealing with two different products, different prices. I've used my time. Thank you. Thank you for your argument. This matter will stand submitted.
judges: England, Gould, Callahan